## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————————

ANTHONY BANKS, PAUL HEARN,     )
A PHAB INVESTMENTS LTD., and   )
ARB (SCOTLAND) INVESTMENTS, LTD., )
                                )
        Plaintiffs,              )
                                )      Civil Action No.
      v.                     )      21-10746-FDS
                                )
CHARLES SABA and ARTHUR      )
NAPOLITANO,                  )
                                )
        Defendants.         )
———————————————————————————)

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO REMAND

**SAYLOR, C.J.**

      This is a business dispute between investors and former management of BeWell Organic Medicine, Inc., which operates a cannabis dispensary and a cannabis cultivation operation.  Two separate lawsuits were filed on the same day, March 31, 2021, in the Business Litigation Session of the Massachusetts Superior Court.  One lawsuit was filed by Anthony Banks, Paul Hearn, A Phab Investments, Ltd., and ARB (Scotland) Investments, Ltd. against Charles Saba and Arthur Napolitano (the "Banks action").  The second was filed by Saba and Napolitano against Banks, Hearn, A Phab, ARB, and George Zalucki (the "Saba action").  The Superior Court consolidated the two cases on April 15, 2021.  Saba and Napolitano then dismissed the Saba action and removed the Banks action to this Court on May 6, 2021, based on diversity jurisdiction. Plaintiffs have moved to remand the case to the Superior Court and for attorney's fees and costs. For the following reasons, the motion will be denied.

## I.     Background

### A.     Factual Background

The facts are stated as set forth in the Banks action complaint.  Banks resides in Perth, Scotland.  (Compl. ¶ 15).  He is a director of ARB, a foreign private limited company with a principal place of business in Perth, Scotland.  (*Id.* ¶ 16).  ARB is a 23.5% shareholder of BeWell.  (*Id.*).  Hearn resides in Derby, England.  (*Id.* ¶ 13).  He is a director of A Phab, a foreign private limited company with a principal place of business in Derby, England.  (*Id.* ¶ 14). A Phab is a 23.5% shareholder of BeWell.  (*Id.*).

Saba, the former President and CEO of BeWell, resides in New Hampshire.  (Notice of Removal ¶ 6; Compl. ¶ 70).  Napolitano, the former Treasurer of BeWell, also resides in New Hampshire.  (Notice of Removal ¶ 7; Compl. ¶ 70).

BeWell is a Massachusetts corporation with a principal place of business in Lowell, Massachusetts.  (Compl. ¶ 19).  It operates a medical cannabis dispensary in Merrimac, Massachusetts, and a cannabis cultivation operation in Lowell, Massachusetts.  (*Id.* ¶ 24).

According to the complaint, Banks and Hearn first invested in BeWell in April 2018.  (*Id.* ¶ 31).  Thereafter, Banks and Hearn had disagreements with Saba and Napolitano about the management and operation of BeWell.  (*Id.* ¶¶ 39; 55; 58-66).  The complaint alleges that Saba and Napolitano acted unlawfully by engaging in self-dealing and improper financial reporting, among other things.  (*Id.* ¶ 64).  Banks and Hearn contend that on March 16, 2021, a new board of directors, composed of Banks, Hearn, Zalucki, Saba, and Napolitano, was elected by a joint consent.  (*Id.* ¶ 69; Ex. 10 of Compl.).  Then, on March 26, 2021, a quorum of directors approved bylaws for BeWell and appointed new officers, with Saba being removed as President and CEO and Napolitano being removed as Treasurer.  (*Id.* ¶ 70).

2

B.    **Procedural Background**

On March 31, 2021, Banks, Hearn, A Phab, and ARB filed a lawsuit against Saba and

Napolitano in the Business Litigation Session of the Massachusetts Superior Court.  BeWell was

included as a "nominal defendant."  (*Id.* ¶ 1).  The complaint seeks a declaratory judgment that

the joint consent electing the new board of directors on March 16, 2021 was valid (Count 1).  (*Id.*

¶ 79).  The complaint also alleges that Saba and Napolitano are liable for breach of contract

(Count 2); breach of the implied covenant of good faith and fair dealing (Count 3); breach of

fiduciary duty (Count 4); and aiding and abetting breach of fiduciary duty (Count 5).  (*Id.* ¶¶ 80-

99).  Counts 1, 4, and 5 are pleaded as derivative claims.  (*Id.* ¶¶ 77, 88, 94).

Also on March 31, 2021, Saba and Napolitano filed suit against Banks, Hearn, A Phab,

ARB, and George Zalucki in the Business Litigation Session of the Massachusetts Superior

Court.  The complaint alleged breach of fiduciary duty and good faith dealing (Count 1,

derivatively and Count 2, directly); minority freeze-out (Count 3); wrongful termination (Count

4); and defamation (Count 5).  (Saba Compl. ¶¶ 69-92).  The complaint also sought a declaratory

judgment (Count 6) and an injunction (Count 7).  (*Id.* ¶¶ 93-106).

On April 2, 2021, counsel for Saba and Napolitano indicated that defendants were willing

to accept service of process in the Banks action.  (Ex. 10 of Plaintiffs' Memorandum).  Saba and

Napolitano formally executed an acceptance and waiver of service on April 8, 2021.  (Ex. A of

Defendants' Memorandum).

The Superior Court consolidated the two cases on April 15, 2021.  (Order of

Consolidation at 1).  On April 16, 2021, the court granted a preliminary injunction in favor of

Banks and Hearn, finding that they were likely to succeed in proving that the March 16, 2021

joint consent and subsequent board votes were valid.  (Prelim. Injunc. at 1).  On May 6, 2021,

Saba and Napolitano dismissed the Saba action.  (Notice of Dismissal).  They then removed the

Banks action to this Court based on diversity jurisdiction.  (Notice of Removal at 3-4).  Plaintiffs have moved to remand the case to the Massachusetts Superior Court and for attorney's fees and costs.

## II.  Legal Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

A notice of removal must be filed in the district court "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b)(1).  When a civil action is removed solely under § 1441(a), all defendants properly joined and served must consent to removal.  28 U.S.C. § 1446(b)(2)(A).

A civil action removable solely on the basis of diversity jurisdiction may not be removed "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).

A case removed from state court must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction . . . ."  28 U.S.C. § 1447(c).  The removing defendant bears the burden of demonstrating the subject-matter jurisdiction of the federal court.  *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999).  "The removal statute is strictly construed, and any doubts about the propriety of removal are resolved in favor of remand to the state forum."  *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 321, 327 (D. Mass. 2015).

### III.    Analysis

#### A.    Procedural Requirements for Removal

Plaintiffs first contend that the notice of removal was untimely and that the state-court consolidation prevented removal.  The Court considers these contentions in turn, mindful of the admonition that the removal statutes should be construed strictly against removal to federal court.  *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Abdelnour v. Bassett Custom Boatworks, Inc.*, 614 F. Supp. 2d 123, 126 (D. Mass. 2009) (Section 1447(c) "must be strictly construed and any doubt concerning federal jurisdiction must be resolved in favor of state court jurisdiction").  The Court is also mindful that "determining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001).

#### 1.    Timeliness of Removal

Section 1446(b) provides that a notice of removal shall be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  The Supreme Court clarified the meaning of the phrase "through service or otherwise" in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*  526 U.S. 344, 347-48 (1999).  The court held that a defendant's 30-day window can be triggered by simultaneous service of the summons and complaint, but "not by mere receipt of the complaint unattended by any formal service." *Id.*

Plaintiffs contend that defendants' notice of removal was untimely, pointing to (1) the fact plaintiffs' counsel e-mailed a courtesy copy of the complaint to defendants' counsel on March 31, 2021, and (2) an e-mail from defendants' counsel to plaintiffs' counsel on April 2, 2021, indicating that he was authorized to accept service on behalf of defendants.  Plaintiffs do not make clear in their memorandum whether they contend that the 30-day window began on

March 31 or April 2, 2021, citing only to the general proposition that "it generally is sufficient that the notice of the lawsuit be received by a person who is authorized to accept process for the defendant." (Plaintiffs' Memorandum at 16).  Defendants, in contrast, argue that the 30-day window began on April 8, 2021, when Saba and Napolitano formally executed and filed an acceptance and waiver of service. (Defendants' Memorandum at 3).  The notice of removal was filed on May 6, 2021.

The Court concludes that this matter was formally served on April 8, 2021.  The sending of a mere courtesy copy of the complaint does not constitute "service or otherwise," nor does the fact of e-mail correspondence between counsel.  *See Murphy Bros.*, 526 U.S. at 347-48 (finding that courtesy copy of filed complaint faxed by plaintiff's counsel did not trigger 30-day removal window).  The notice of removal was therefore timely under 28 U.S.C. § 1446(b).

### 2.   Effect of Consolidation of Cases

Next, plaintiffs allege that defendants did not dismiss their state-court action before they filed their notice of removal in federal court on May 6, 2021, thereby rendering removal improper.  Plaintiffs offer a copy of the state-court docket, captured at approximately 5:30 p.m. on May 6, 2021. (Ex. 6 of Plaintiffs' Memorandum).  Defendants, in contrast, contend that they filed their notice of dismissal on May 6, 2021, at 8:37 a.m. in the Superior Court and their notice of removal at 12:37 p.m. in this Court. (Defendants' Memorandum at 7).  Although the notice of dismissal was not accepted by the Superior Court Clerk until the following day, the Massachusetts Electronic Filing Rules provide that once a document is accepted by the clerk, "the document shall be considered 'filed' with the court at the time the original submission to the e-filing system was complete . . . ."  Rule 4(d) of S.J.C. Rule 1:25.  Therefore, defendants' voluntary dismissal was operative prior to removal.

Plaintiffs further contend that because their state-court case was consolidated into defendants' state action, defendants were actually plaintiffs in the state-court action and thus could not remove at all. *See* 28 U.S.C. § 1441(a) (civil action filed in state court "may [only] be removed by the defendant or the defendants"). Plaintiffs also allege that in the consolidated action, they were considered defendants and therefore did not consent to removal. *See* 28 U.S.C. § 1446(b)(2)(A) (removal of civil action filed in state court requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action").

That argument is grounded in a misunderstanding of the procedural posture of this case. Because the consolidation occurred in Massachusetts state court, the effect of the consolidation should be determined by Massachusetts law. In Massachusetts, "consolidation does not generally effect a merger of cases into a single action," but rather "combines cases for convenience and economy in administration." *Arequipeno v. Hall*, 2000 WL 420622, at *2 (Mass. App. Div. 2000) (internal citations and quotation marks omitted).[1]

On April 15, 2021, the Superior Court "consolidate[d] these closely-related civil actions for all purposes." (Order of Consolidation at 1). Plaintiffs point out that the order is not limited to consolidation for trial purposes, arguing that consolidation here operated as a merger. Plaintiffs cite no Massachusetts authority for that argument other than the docketing procedures in Massachusetts Superior Court Rule 31. (Plaintiffs' Reply at 2). In any case, the scope of the

---

[1] As noted above, Massachusetts law on consolidation governs here. Nevertheless, plaintiffs cite to two cases from the District of Maryland and Northern District of Indiana where consolidation issues influenced the court's decision to remand. *See Receivership Est. of Mann Bracken, LLP v. Cline*, 2012 WL 2921355, at *5 (D. Md. July 16, 2012) (remanding where one set of defendants in consolidated action did not consent to removal); *Michigan City v. Hays-Republic Corp.*, 2020 WL 5757986, at *3-5 (N.D. Ind. Sept. 28, 2020) (remanding after concluding that nature of state-court consolidation was ambiguous). Even assuming the Court finds these cases to be persuasive authority, the facts are distinguishable. Both involved consolidations where the two actions were brought by the same plaintiff against different defendants, and neither action was dismissed prior to removal. *Id.* Here, the consolidated actions were not brought by the same plaintiff, and importantly, defendants dismissed their action prior to removal.

Superior Court's order of consolidation is only relevant for present purposes if it somehow precluded the voluntary dismissal of the Saba action. Plaintiffs cite no Massachusetts law to support such a position. Accordingly, defendants were permitted to voluntarily dismiss the Saba action. At the time of removal on May 6, 2021, there was only one action.

### B.    Waiver of Removal

Plaintiffs further contend that defendants waived their right to remove. A defendant may waive its right to remove a case to federal court when its actions "indicate the defendant has invoked the jurisdiction of the state court or has taken actions that manifest the defendant's intent to have the case adjudicated in state court." *D.B. ex rel. Elizabeth B. v. Sutton Sch. Dist.*, 2011 WL 475064, at *2 (D. Mass. Feb. 3, 2011) (quoting *Hernandez–Lopez v. Commonwealth of Puerto Rico*, 30 F. Supp. 2d 205, 209 (D.P.R. 1998)). A waiver must be "clear and unequivocal" and should be found only in "extreme situations." *City of Springfield, Mass. v. Comcast Cable Commc'ns, Inc.*, 670 F. Supp. 2d 100, 105 (D. Mass. 2009) (internal citations and quotation marks omitted). A defendant will not lose its right to remove "short of seeking an adjudication on the merits" in state court. *Id.; see also Cummings Properties, LLC v. Prod. Res. Grp., L.L.C.*, 2021 WL 1251386, at *2 (D. Mass. Apr. 5, 2021) (finding no waiver when defendant filed answer, served discovery requests, and moved to transfer to another state court).

Plaintiffs point to a myriad of cases supporting waiver in cases where defendants filed a motion to dismiss, asserted counterclaims, or engaged in pretrial discovery. However, those cases have widely varying conclusions and are not dispositive. *Compare, e.g.*, *City of Springfield*, 670 F. Supp. 2d at 105 (defendants' filing of a motion to dismiss in state court did not constitute waiver) *with City of Albuquerque v. Soto Enters, Inc.,* 864 F.3d 1089, 1098-99 (10th Cir. 2017) (defendant's filing of a motion to dismiss in state court constituted waiver).

Here, defendants litigated plaintiffs' motion for preliminary injunction, requested that the

Superior Court set a discovery schedule, and served discovery and noticed depositions.[2] Defendants also filed a separate lawsuit in the Superior Court that has since been voluntarily dismissed.  Without more, these actions do not demonstrate a "clear and unequivocal" waiver of the right to remove.  *See City of Springfield*, 670 F. Supp. 2d at 105.  The Court is also not persuaded that defendants' actions in filing their own case, now dismissed, constitute waiver in this case.

As part of the waiver analysis, the Supreme Court has cautioned that "a party may [not] experiment on his case in the state court, and, upon an adverse decision, then transfer it to the federal court."  *See Rosenthal v. Coates*, 148 U.S. 142, 147 (1893).  The Court does not ignore defendants' perhaps questionable tactics, including the fact that defendants decided to remove the action to this court only after the Superior Court granted plaintiffs a preliminary injunction. However, without more, defendants' actions here are not sufficient to constitute a waiver of their right to remove.

### C.   <u>Alignment and Identity of Parties</u>

Plaintiffs also argue that BeWell is a defendant in this action, precluding removal on account of the derivative claims.  The substantive law of Massachusetts, the state where BeWell is incorporated, governs this issue.  *See Lexington Ins. Co. v. Gen. Acc. Ins. Co*., 338 F.3d 42, 46 (1st Cir. 2003) (explaining that "a federal court must apply the choice-of-law framework of the forum state"); *Harrison v. NetCentric Corp*., 433 Mass. 465, 471 (2001) (reaffirming that Massachusetts follows internal affairs doctrine, such that "[s]tate of incorporation dictates the choice of law regarding the internal affairs of a corporation").

---

[2] Plaintiffs also allege that defendants served these discovery requests in the Superior Court after they filed their notice of removal on May 6, 2021.  (Plaintiffs' Memorandum at 13).  Even if true, upon removal, "the jurisdiction of the state court 'absolutely cease[s], and that of the [federal court] immediately attache[s]."  *Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 841-42 (1st Cir. 1988).

In deciding whether a claim is direct or derivative, Massachusetts courts look to whether "the harm [plaintiffs] claim to have suffered resulted from a breach of duty owed directly to them, or whether the harm claimed was derivative of a breach of duty owed to the corporation." *Int'l Bhd. of Elec. Workers Loc. No. 129 Benefit Fund v. Tucci,* 476 Mass. 553, 558 (2017). Derivative claims include breaches of fiduciary duties owed to the corporation.  *Id.; see also Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 26 (D. Mass. 1996) (recognizing derivative claims for "mismanagement of funds, embezzlement or breach of fiduciary duty, resulting in diminution of value of corporate stock or assets").

In the complaint, plaintiffs allege at least two derivative claims, including breach of fiduciary duties owed to BeWell (Count 4) and aiding and abetting breaches of fiduciary duties owed to BeWell (Count 5).  Thus, plaintiffs' suit includes derivative claims, raising two distinct issues:  (1) whether BeWell is a nominal or real party and (2) whether BeWell is properly aligned as a plaintiff or defendant.  The Court considers these issues in turn.

### 1.    <u>Nominal or Real Party</u>

In the complaint, plaintiffs themselves characterize BeWell as a "nominal defendant." (Compl. ¶ 19).  However, "[w]hen determining whether diversity jurisdiction exists, . . . courts are not bound either by formalistic styling or by the alignment specified in the pleadings.  Rather, an inquiring court should look beyond these formalities and attempt to determine, to the extent practicable, the actual interests of the parties."  *Gabriel v. Preble*, 396 F.3d 10, 14 (1st Cir. 2005) (citing *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69-70 (1941)).

It is well-established that "all the defendants who are necessary and not merely nominal parties must be joined in the removal proceedings."  *Bailen v. Deitrick*, 84 F.2d 375, 375-76 (1st Cir. 1936).  In the context of derivative suits, the First Circuit has held that a corporation is an indispensable party under the meaning of Fed. R. Civ P. 19, which addresses joinder of parties

"needed for just adjudication."  *See Gabriel*, 396 F.3d at 13-14.  The corporation "therefore must be aligned on one side or the other."  *Id.* at 14*; see also Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522-23 & n.2 (1947) (holding that corporation is necessary party in derivative suit).

Here, plaintiffs' breach of fiduciary-duty claims are asserted on behalf of BeWell, which is not a nominal party with "no interest in the controversy."  *Bishay v. Am. Arb. Assoc.*, 221 F. App'x 3, 4 (1st Cir. 2007) (quoting *Salem Trust Co. v. Mfrs.' Finance Co.*, 264 U.S. 182, 190 (1924)).  Accordingly, the citizenship of BeWell cannot be disregarded for removal purposes.

### 2.    Plaintiff or Defendant

The characterization of BeWell as a plaintiff or defendant is significant for two reasons. First, if BeWell is a proper defendant, then the consent of all defendants to removal was lacking pursuant to 28 U.S.C. § 1446(b)(2)(A).  Second, BeWell is a citizen of Massachusetts and the case was removed on the basis of diversity jurisdiction; thus, if BeWell is a proper defendant, removal would be improper to the District of Massachusetts pursuant to 28 U.S.C. § 1441(b)(2).

The Court begins with the general principle, articulated by the Supreme Court in *Koster,* that the corporation is normally characterized as a plaintiff in a derivative suit.  *Koster*, 330 U.S. at 522-23.  The rationale is that derivative suits are brought on behalf of the corporation, with any recovery accruing to it.  *Id.*  However, over time a prominent exception has developed, whereby the corporation is characterized as a defendant when it is antagonistic to plaintiff's derivative suit.  *See Smith v. Sperling*, 354 U.S. 91, 97 (1957) (aligning corporation as defendant when "the stockholder and those who manage the corporation are completely and irrevocably opposed on a matter of corporate practice and policy").

In 2005, the First Circuit applied *Sperling* in a shareholder's derivative suit where diversity jurisdiction depended on whether the corporation was characterized as a plaintiff or

11

defendant. *Gabriel*, 396 F.3d at 12. The First Circuit held, in accordance with *Sperling,* that a corporation should be aligned as a defendant when the corporation is "adverse" or "antagonistic" to the plaintiff's derivative suit. *Id.* at 14.[3] A corporation is "adverse to a derivative suit when, regardless of the reason, the corporation's management opposes the maintenance of the action." *Id.* The First Circuit cautioned that determining whether the corporation is adverse to the lawsuit should be based on the "face of the pleadings" at the time the lawsuit was filed, not an "extended evidentiary inquiry." *Id.* at 15. The complaint may helpfully reveal the corporation's alignment based on plaintiff's demand requirement in a derivative suit. *Id.*

Here, contrary to the scenario in *Gabriel,* the complaint alleges that Saba was removed from his position of President and CEO of BeWell on March 26, 2021, at which point Napolitano was also removed as Treasurer. (Compl. ¶ 70). It further alleges that Lars Vaule was appointed as CEO at the same meeting. (*Id.*). That meeting was prior to the commencement of plaintiffs' lawsuit, filed on March 31, 2021.

This case is simply not like *Gabriel,* where "although [the plaintiff] own[ed] half of [the corporation], its management [was] firmly in the opposition camp." *Gabriel*, 396 F.3d at 16. The First Circuit noted that "it is the individual defendants who, as the *current management*, enjoy the prerogative of deciding what is in the best interests of the company at the moment." *Id.* (emphasis added). The plaintiff in *Gabriel* also did not make any demand upon the corporation's board of directors because such action would have been futile. *Id.* at 15. In contrast, plaintiffs here appointed new directors and officers, and Saba is no longer President and

---

[3] The First Circuit "[left] open the possibility that other cases may present sufficiently unusual facts to justify departing from the conventional paradigm" of the corporation as adverse to suit. *Gabriel,* 396 F.3d at 16 n.3.

CEO of BeWell.[4]  In the complaint, plaintiffs do not allege that demand would be futile for their derivative claims; instead, they claim that irreparable injury would result if they waited 90 days pursuant to Mass. Gen. Laws ch. 156D, § 7.42.  Finally, BeWell is not "hostile to the suit." *Gabriel*, 396 F.3d at 15.

Other courts have reached a similar result when the corporation was not antagonistic to suit.  *See, e.g.*, *Tessari v. Herald,* 207 F. Supp. 432, 435-37 (N.D. Ind. 1962) (finding no antagonism when complaint named former management as individual defendants, but none were associated with corporation at time lawsuit was filed); *First Nat. Bancshares of Beloit, Inc. v. Geisel*, 853 F. Supp. 1333, 1336 (D. Kan. 1994) (holding that corporation was properly aligned as plaintiff because defendants were not managing corporation at time lawsuit was filed); *Nejmanowski v. Nejmanowski*, 841 F. Supp. 864, 868 (C.D. Ill. 1994) (holding that corporation was not antagonistic because plaintiff "ha[d] the necessary support in the company to remove any corporate official who oppose[d] this lawsuit"); *Lewis v. Odell*, 503 F.2d 445, 447 (2d Cir. 1974) (affirming district court's realignment of corporation as plaintiff, observing that corporation made neutral responses to derivative complaint and was not antagonistic); *Netwolves Corp. v. Sullivan*, 2001 WL 492463, at *6 (S.D.N.Y. May 9, 2001) (providing that "antagonism has generally not been found where the corporation does not, would not, or cannot express opposition to the initiation of the lawsuit"); *Liddy v. Urbanek*, 707 F.2d 1222, 1224-25 (11th Cir. 1983) (stating that "if the individual plaintiff is the majority stockholder or a controlling officer, then the corporation cannot be deemed antagonistic to the suit and it should be realigned as a plaintiff"); *Irwin v. West End Development Co.*, 342 F. Supp. 687, 702 (D. Colo. 1972), *rev'd in*

---

[4] The complaint alleges that defendants still occupy two of the five director positions; however, plaintiffs contend that the remaining three directors, Banks, Hearn, and Zalucki, constitute a quorum.  (Compl. ¶ 68-70).

*part on other grounds*, 481 F.2d 34 (10th Cir. 1973) (finding no antagonism where plaintiff shareholders controlled majority of corporation's stock).  *Cf. In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1237 (9th Cir. 2008) (determining that corporation should be aligned as defendant where lawsuit was filed against "eleven current and former board members . . . , seven of whom remain on the board and can fairly be said to control the corporation"); *Keller v. Hughes*, 2010 WL 3212049, at *3 (S.D. Ohio Aug. 12, 2010) (finding antagonism where plaintiff occupied only one director position and was minority shareholder, whereas defendants controlled two director positions and had combined majority shareholder power).

The Court concludes that BeWell is not a nominal party and is properly characterized as a plaintiff in this action.  It therefore did not have to consent to removal pursuant to 28 U.S.C. § 1446(b)(2)(A), and its citizenship did not prevent removal to the District of Massachusetts pursuant to 28 U.S.C. § 1441(b)(2).

## D.   Diversity Jurisdiction

Removal from state to federal court is proper only if the federal court would have had original jurisdiction over the matter.  28 U.S.C. § 1441(a).  Although plaintiffs do not dispute diversity jurisdiction in their motion to remand, the removing defendants bear the burden of demonstrating subject-matter jurisdiction.  *Danca*, 185 F.3d at 4.

Pursuant to 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States . . . ."  Thus, federal jurisdiction over this case requires both (1) an amount in controversy that exceeds $75,000 and (2) diversity of citizenship between the parties.

### 1.   Amount in Controversy

Under 28 U.S.C. § 1446(c)(2), if the complaint "demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'"  *Dart Cherokee*

14

*Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014) (quoting 28 U.S.C. § 1446(c)(2)).

Here, the complaint does not allege a specific amount of damages. The civil cover sheet for acceptance into the Business Litigation Session also does not include a statement of damages. (Civil Cover Sheet at 1). In any case, "civil cover sheets are inherently imprecise, and the extent of a civil cover sheet's role in determining the amount in controversy is not settled in this Circuit." *Toro v. CSX Intermodal Terminals, Inc.*, 199 F. Supp. 3d 320, 324 (D. Mass. 2016).

When the complaint does not state the amount in controversy, "the defendant's notice of removal may do so." *Dart Cherokee*, 574 U.S. at 84. A defendant's notice of removal must only include a "plausible allegation" that the amount in controversy exceeds $75,000. *Id.* at 89. A defendant's "amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87. But if the plaintiff contests that allegation, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

Here, the notice of removal asserts that the amount in controversy is at least $75,000. (Notice of Removal at 2). Plaintiffs do not contest that allegation, and there is no apparent reason for the Court to question it. For present purposes, the Court will accept the defendants' amount-in-controversy allegation. *See Dart Cherokee*, 574 U.S. at 84.

### 2.   Diversity of Citizenship

As set forth above, diversity jurisdiction under § 1332(a)(1) exists only in cases between "citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). "This statutory grant requires complete diversity between the plaintiffs and defendants in an action." *Picciotto v. Continental Cas. Co.*, 512 F.3d 9, 17 (1st Cir. 2008) (emphasis omitted) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *Halleran v. Hoffman*, 966 F.2d 45, 47 (1st Cir. 1992)). § 1332(a)(2) also provides alienage jurisdiction in cases between "citizens of a State and citizens or subjects

of a foreign state . . . ."  28 U.S.C. § 1332(a)(2).

There is complete diversity here.  Plaintiffs Banks and Hearn are citizens of foreign states.  Plaintiffs ARB and A Phab are foreign private limited companies.  ARB has a principal place of business in Perth, Scotland, and Banks, a citizen of a foreign state, is one of its directors.  Similarly, A Phab has a principal place of business in Derby, England, and Hearn, a citizen of a foreign state, is one of its directors.

It is unclear from the complaint whether ARB and A Phab should be treated like corporations—in which case citizenship is based on the entities' principal place of business and place of incorporation—or limited liability companies—in which case citizenship is based on the citizenship of the entities' members.  At least one federal court has determined that "UK private limited companies are treated as corporations for the purposes of diversity subject-matter jurisdiction."  *SHLD, LLC v. Hall*, 2015 WL 5772261, at *2 (S.D.N.Y. Sept. 29, 2015).  In any event, because both entities have foreign principal places of business and foreign directors, alienage jurisdiction is met regardless of how ARB and A Phab are characterized.

Both defendants are citizens of New Hampshire.  BeWell is a Massachusetts corporation with a principal place of business in Lowell, Massachusetts.  Because no other party to this case is a citizen of Massachusetts, BeWell's alignment as a plaintiff or defendant does not affect diversity jurisdiction.  Accordingly, the Court finds that removal is proper.

### E.  **Future Counterclaims**

Plaintiffs predict that defendants will attempt to reassert their state claims in the form of counterclaims in this action.  They note that the notice of dismissal was "without prejudice" and that the notice of removal discusses the citizenship of Zalucki, who is not a party to the current action.  Notably, Zalucki was a defendant in the state-court action brought by Saba and Napolitano.  These concerns are premature, given that defendants have not answered the

16

complaint and no counterclaims have been asserted.  The Court will address these issues if and when they arise.

**IV.**    <u>**Conclusion**</u>

For the foregoing reasons, plaintiffs' motion to remand, and plaintiffs' request for attorney's fees and costs, are DENIED.

**So Ordered.**


/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: September 23, 2021                    Chief Judge, United States District Court

17